UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DI WEN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GREENPOINT MORTGAGE FUNDING, INC., et al.,<br><br>　　　　　Defendants. | Case No. 21-cv-07142-EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Docket Nos. 8, 15 |

## I.　INTRODUCTION

On September 21, 2021, the Court granted Plaintiff Di Wen's ("Wen") motion for temporary restraining order ("TRO") to enjoin the foreclosure sale scheduled for that same day of her property, 2458 Early Rivers Place, Union City, CA 94587 (the "Property"), by Defendants Greenpoint Mortgage Funding, Inc. ("Greenpoint"), Real Time Resolutions, Inc. ("RTR") and RRA CP Opportunity Trust 1 ("Trust") (collectively "Defendants"). Docket No. 15. The Court granted a TRO enjoining sale of the property until October 19, 2021 and ordered the parties to address whether the TRO should be converted into a preliminary injunction. *Id.* Now pending is Wen's request for preliminary injunction to enjoin Defendants from foreclosing on her property.

For the following reasons and those stated on the record at the preliminary injunction hearing, the Court **DENIES** Wen's motion for preliminary injunction.

## II.　FACTUAL AND PROCREDURAL BACKGROUND

A.　Factual Background

Wen alleges that she is the owner 2458 Early Rivers Place, Union City, CA 94587 (the "Property"). Docket No. 1-1, Exh. 1 ("Complaint") ¶ 3. On or about December 19, 2006, Wen

1  entered into a second mortgage with Defendant Greenpoint in exchange for a $100,000 Home
2  Equity Line of Credit ("HELOC").  *Id.* ¶ 10.  By letter dated September 12, 2011, Wen
3  acknowledged that she defaulted on the loan as of that date, due to loss of her job, and requested
4  loss mitigation assistance from the servicer at that time.  Docket No. 21-1 ("Trakhtenbroit Decl.")
5  ¶ 7; *id.*, Exh. 3.

> Loan # ■■■■■■■■
>
> Di Wen
> 2458 Early Rivers Place
> Union City CA, 94587
>
> September 12, 2011
>
> To,
> Bank of America
> Re: Loan # ■■■■
>
> Dear Sir/ Madam
> I am writing this letter to explain my unfortunate set of circumstances that have me to become delinquent on my mortgage.  I have always taken pride in the fact that I paid my bills on time until just recently.
>
> The main reason that caused us to be late is, I lost my job and I tried to find a job but till today I couldn't find a job.  Soon after being late and my income not being nearly enough , I had fallen further and further behind.  Now its to the point where I cannot afford what is owed.  I am single Mom with two children and  Its our full intention to pay what we owed, but at this time I have exhausted all of my  saving and income so I am  turning to you for HELP.
>
> My  situation has get better because my Mom supporting me and I have rented one room but still have no Job.  I am going to borrow more money from my mom to settle this account. I will greatly appreciate if you could help me and settle  this matter, settlement offer letter is attached. My property value is far less of my original loan amount so please help to settle this account
>
> Thank you.
>
> Sincerely,
>
> *[signature]*
>
> Di Wen

22  *Id.*  The last payment that was tendered by Wen on the Loan was on or about April 28, 2011.  *Id.* ¶
23  8; Exh. 4 (Loan Transaction Activity Report).
24  ///
25  ///
26  ///
27  ///
28  ///

2

>
> **Bank of America Home Loans**
>
> Page 3
>
> Loan Number: ████2786
> Statement Period: 01/1986 - 09/2021
> Date Prepared: 09/20/2021
>
> Property Address:
> 2458 EARLY RIVERS PL
> UNION CITY, CA 94587
>
> | Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
> |---|---|---|---|---|---|---|---|---|---|---|
> | | **Beginning Balance** | | | 100,000.00 | | .00 | | | | .00 |
> | 12/22/2010 | REGULAR PAYMENT | 408.89 | 07/2008 | .00 / 100,000.00 | 408.89 | .00 / .00 | .00 | .00 | .00 / 172.62 | .00 / .00 |
> | 01/26/2011 | REGULAR PAYMENT | 408.89 | 08/2008 | .00 / 100,000.00 | 408.89 | .00 / .00 | .00 | .00 | .00 / 172.62 | .00 / .00 |
> | 02/24/2011 | REGULAR PAYMENT | 408.89 | 09/2008 | .00 / 100,000.00 | 408.89 | .00 / .00 | .00 | .00 | .00 / 172.62 | .00 / .00 |
> | 03/24/2011 | REGULAR PAYMENT | 408.89 | 09/2008 | .00 / 100,000.00 | 408.89 | .00 / .00 | .00 | .00 | .00 / 172.62 | .00 / .00 |
> | 04/28/2011 | REGULAR PAYMENT | 408.89 | 10/2008 | .00 / 100,000.00 | 408.89 | .00 / .00 | .00 | .00 | .00 / 172.62 | .00 / .00 |
>
> **Fee Transaction Activity (01/1986 - 09/2021)**
>
> No fee transaction for the time period.

*Id.*

In September 2012, Greenpoint assigned the loan to defendant RRA CP Opportunity Trust 1 ("Trust"), to be serviced by RTR; RTR remains the current loan servicer. *Id.* ¶¶ 11-12; Trakhtenbroit Decl. ¶¶ 2-3. Thereafter, RTR sent Wen a letter notifying her loan servicing had been transferred to RTR and provided the payment address for her future payments to RTR. *Id.* ¶ 10; Exhibit 2 (Loan Transfer Letter). On or about October 3, 2012, Wen, through counsel, submitted a cease-and-desist request to RTR demanding that all communication with her in regard to the loan be stopped and instead be directed to her counsel. *Id.* ¶¶ 11-12. On October 3, 2013, Wen, through counsel, transmitted (via fax) a letter to RTR acknowledging that she defaulted on the loan as a result of her job loss and inability to find another job, and sought loss mitigation assistance. *Id.* ¶ 14; Exh. 6. To date, Wen has not cured her default in payments due on the loan, nor has Wen ever tendered a payment to RTR. *Id.* ¶¶ 9-10.

Wen claims her default is due to not receiving monthly statements on the loan. Complaint ¶ 13. Wen alleges she never received any periodic statements from RTR regarding the status of the Loan, nor any information about any payments she we required to make to RTR. Docket No. 1-1 at 32 ¶¶ 4-8. As a result of the lack of notice of any periodic statements, Wen alleges that she was "not only unaware [she] was obligated to make payments, but ignorant of both the amount of

3

1  those payments, how to make them and to whom." *Id.* at 33 ¶ 10.  Wen's principal argument is
2  that Defendants breached the terms of the HELOC contract by failing to provide her with periodic
3  statements and notice of the payments she owed.  Docket No. 8 at 4.
4        Based on these allegations, Wen asserts six causes of action: (i) breach of contract; (ii)
5  breach of covenant of good faith and fair dealing; (iii) unjust enrichment; (iv) violation of
6  Rosenthal Fair Debt Collection Practices Act ("Rosenthal"); (v) Unfair Competition-violation of
7  Business and Professions Code §§17200, et seq. ("UCL"); (vi) for fraud.  Complaint ¶¶ 32-45.
8  B.   Procedural Background
9        On August 17, 2021, Wen filed a complaint against Defendants in the Superior Court of
10 California for the County of Alameda alleging six claims—breach of contract, breach of covenant
11 of good faith, unjust enrichment, violation of the Rosenthal Fair Debt Collection Practices Act,
12 and unfair competition—and sought an ex parte Temporary Restraining Order enjoining the
13 August 20, 2021 foreclosure sale.  Docket No. 1-1 at 5-17 ("Complaint"); *Wen v. GreenPoint*,
14 Case No. HG21109528, Docket (Cal. Sup. Ct.) ("Sup. Ct. Docket").  The Superior Court granted a
15 TRO on August 19, 2021.  *Id.*  On September 15, 2021, Defendants timely removed the action to
16 this court based on diversity jurisdiction.  *See* 28 U.S.C. §§ 1332, 1446(b).
17       On September 17, Wen filed an ex parte motion for TRO to enjoin a foreclosure sale of the
18 Property purportedly scheduled for September 21, 2021.  Docket No. 8 at 2 ("TRO Mtn.").  The
19 Court granted a TRO enjoining sale of the property until October 19, 2021.  Docket No. 15.  Now
20 pending is Wen's request for preliminary injunction to enjoin Defendants from foreclosing on her
21 property.

### III.   LEGAL STANDARD

23 A party seeking a preliminary injunction must meet one of two variants of the same
24 standard.  Under the original *Winter* standard, a party must show "that he is likely to succeed on
25 the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the
26 balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v.*
27 *NRDC, Inc.*, 555 U.S. 7, 20 (2008).  Under the "sliding scale" variant of the *Winter* standard, "if a
28 plaintiff can only show that there are 'serious questions going to the merits' – a lesser showing

1    than likelihood of success on the merits – then a preliminary injunction may still issue if the
2    'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are
3    satisfied." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017).

### IV.     ANALYSIS

Wen is unable to satisfy the first *Winter* factor: she has not raised serious questions going to the merits, much less any likelihood of prevailing.

A.    There is No Factual Basis Supporting Wen's Argument that Defendants Caused Her to Incur Substantial Fees and to Default on the Loan

The basis for each of Wen's contract, tort and statutory claims is her contention that Defendants failed to send her monthly statements that, which in turn, caused her to be unable to make her mortgage payments and caused her to default on the loan. *See* Docket No. 8 ("TRO Motion") at 4, 6-10; Docket No. 23 ("Reply") at 2 ("Defendant, however, failed to send Plaintiff periodic statements and thereby breached the contract . . . [and as] an actual and proximate result of Defendant's breach, Plaintiff has incurred substantial fees and interest on the HELOC because she was never informed how much to pay, where to pay or to whom.).

However, Wen's contention elides the undisputed evidence that Wen defaulted on the loan in 2011 *before* Defendants were involved in servicing the loan. Trakhtenbroit Decl. ¶ 7; *id.*, Exh. 3. Moreover, in her letter to the prior servicer of the loan in September 2011, she acknowledged that she defaulted on the loan *because she lost her job*. *Id.*  The last payment that Wen tendered on the Loan was on or about April 28, 2011.  *Id.* ¶ 8; Exh. 4.  Her default was not caused by the lack of monthly statements from the service in 2012.  Indeed, after Defendants became the servicer of the loan in 2012, Wen corresponded with Defendants through her counsel in 2013 and, *again,* expressly acknowledged that she defaulted on the loan because she had lost her job and sought loss mitigation assistance.  *Id.* ¶ 14; Exh. 6.

To date, Wen has not cured her default in payments due on the loan, nor is there evidence that Wen ever tendered a payment to RTR. *Id.* ¶¶ 9-10.  Moreover, Wen's correspondence with Defendants through her counsel demonstrates that she was aware of a method to communicate, however, she presents no allegations or information demonstrating that she made any efforts to

follow up with Defendants to inquire about the status of her loan or attempted to obtain any monthly statements.

Wen ignores the evidence that Defendants introduced and fails to address Defendants' arguments. She offers no explanation for her failure to grapple with the key facts, particularly because Defendants introduce this same evidence and argument in response to her motion for TRO, Docket Nos. 13-14, and the Court questioned Wen's counsel about it at the TRO hearing on September 21, 2021, Docket No. 15. Hence, there is no basis for the Court to credit Wen's contention that she defaulted due to Defendants' failure to provide periodic statements after they started servicing her loan in 2012.[1]

B. There is No Factual Basis Supporting Wen's Argument that Defendants Materially Breached the Contract by Failing to Send Her Periodic Statements and Excusing Her Non-Payment

Wen argues that even if her job loss was the cause of Wen's *initial default* on her loan in 2011, she *could* have caught up and become current on her payments *if* Defendants provided her with periodic statements informing her how much she owed and where she should make her payment. Wen contends that Defendants' failure to provide periodic statements *after she initially defaulted* was the cause of Wen's failure to correct the default. Wen argues that Defendants' breach of contract by failing to provide periodic statements excused her from having to make any payments on the loan. *See also* Reply at 2 ("Plaintiff complied with substantially all of her obligations under the contract or compliance therewith was excused."), 3 ("Plaintiff's obligations to make payments depended on receiving the periodic statement[.] . . . Had Defendant simply sent Plaintiff periodic statements, Plaintiff would have made said payments.").

There is, however, no factual basis in the record for the Court to find that Wen's non-payment was excused. "To excuse performance by one party to a contract, the breach by the other party must be material." *Card Tech. Int'l, LLLP v. Provenzano*, No. CV 11–2434–DSF (PLAx),

---

[1] Even if the Court were to accept Wen's factual allegations, despite the fact that they are directly contradicted by evidence that she fails to acknowledge, Wen's preliminary injunction brief fails to cite a single source of legal authority in support of any of her six claims for relief to demonstrate that she is entitled to relief. *Cf.* Docket No. 23.

2012 WL 2135357, at *20 (C.D. Cal. June 7, 2012) (citing *Brown v. Grimes*, 192 Cal. App. 4th 265, 277 (Ct. App. 2011)). "Normally the question of whether a breach of an obligation is a material breach, so as to excuse performance by the other party, is a question of fact." *Brown*, 192 Cal. App. 4th at 277. A breach is material when it "frustrate[s] the purpose of the contract." *Superior Motels, Inc. v. Rinn Motor Hotels, Inc.*, 195 Cal. App. 3d 1032, 1051 (Ct. App. 1987) (citation omitted). There is no evidence in the record that Defendants' alleged breach of contract by failing to send periodic statements was a *material* breach that frustrated the purposes of the contact and rendered Wen's failure to make payments on the loan excusable.

First, there is no evidence in the record to support Wen's assertion that she *could* or *would* have made payments on the loan if she had received periodic statements. The record shows that the last payment Wen made was in April 2011—more than ten years ago. Trakhtenbroit Decl. ¶ 8. There is no basis for the Court to credit Wen's assertion that she was unaware that she had any continuing obligations on the loan after she defaulted. Indeed, Wen contacted the previous loan servicer in 2011 and Defendants in April 2013 to reiterate that she defaulted on the loan due to her job loss, but did not make nor offer to make any payments at either time. *Id.* ¶ 14. Wen has not produced any evidence that she had the ability to make loan payments or that she could have cured the default. She has failed to make a single payment on the loan since 2011. Defendants' failure to provide monthly statements, statements never requested by Ms. Wen, did not "frustrate the purpose" of the loan agreement. *Superior Motels,* 195 Cal. App. 3d at 1051.

Second, there is no factual basis for the Court to conclude that Defendants' alleged failure to send periodic statements was a *material* beach that *excused* Wen's non-payment on the loan. The breach that Wen alleges—that Defendants failed to provide her with periodic statements regarding her loan payments—could easily have been fixed if Wen contacted Defendants to ask about the status of her loan, the amount she owed, or how she could cure her default. After Wen defaulted on the loan in 2011, there is no evidence that she ever attempted to make a payment on her loan or inquire about the status of her default. Wen knew how to contact Defendants, as she sent letters to Defendants through her counsel requesting, in 2012, that further correspondence about debt collection be routed through her counsel, and, in 2013, informing Defendants that she

defaulted due to her loss of job. Given the ease with which Wen could have averted the problems she alleges that flowed from Defendants' failure to provide periodic statements, there is no basis for the Court to find that Wen's failure to make payment on the loan was excused by Defendant's failure to send monthly statements.

In summary, all of Wen's legal theories stem from unsupported factual allegations that Defendants *caused* her to default or that Defendants *materially* breached the contract, excusing her non-performance. The Court finds that Wen has not shown *any* likelihood of success on her claims. Even if the balance of the hardships were deemed to tip sharply in Wen's favor and if the Court were to credit her allegations of irreparable injury, Wen still must show at least a serious question on the merits. She has not done so on this record.

## V.     CONCLUSION

For the foregoing reasons and those stated on the record, the Court **DENIES** Wen's request for preliminary injunction. The Temporary Restraining Order, Docket No. 15, is lifted.

This order disposes of Docket Nos. 8 and 15.

**IT IS SO ORDERED**.

Dated: October 20, 2021

_____
EDWARD M. CHEN
United States District Judge